IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
| GREGORY B. HAYES, | ) CASE NO. 13-80035-G3-7 |
| Debtor, | ) |

## MEMORANDUM OPINION

The court has held an evidentiary hearing on the "Motion of the United States Trustee to Dismiss Chapter 7 Case under 11 U.S.C. § 707(b)" (Docket No. 83). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

Gregory B. Hayes ("Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on January 31, 2013. The case was converted to a case under Chapter 7 of the Bankruptcy Code by Debtor's filing of a notice of conversion on November 5, 2013. (Docket No. 62).

The parties have stipulated that Debtor is an individual whose debts are primarily consumer debts.

At the hearing on the instant motion, Debtor testified that he got married in 2002. He testified that he and his former wife had a home custom built during 2004. He testified that the purchase price for the home was approximately $378,000. He testified that the home is approximately 3,900 square feet, and has five bedrooms, three and one-half bathrooms, and a three car garage. He testified that the home included approximately $120,000 in upgrades. He testified that he and his former wife did not provide a down payment on the home, but rather financed the entire purchase price on two mortgages, one for 80 percent of the purchase price, and the other for 20 percent of the purchase price.

Debtor testified that he does not know the current value of the home. He testified that he received an opinion from a real estate agent at some time in the past that the value of the home was $307,000. Debtor valued the property at $307,000 in his schedules. (Docket No. 12).

Debtor testified that he added a swimming pool and spa to the home during 2007. He testified that he borrowed an additional $63,000, secured by the home, for construction of the pool and spa.

Debtor testified that, during 2012, he and his former wife were divorced. He testified that the divorce decree awarded the house and two Infiniti automobiles to Debtor, and a Toyota

automobile to Debtor's former spouse.[1]

Debtor testified that the monthly payments owed on the debts secured by the home are approximately $1,800 on the first mortgage, $768 on the second mortgage, and $460 on the pool loan.

Debtor's most recent Schedule J, filed on June 25, 2014, list monthly expense amounts of $1,896.57 for the first mortgage, $1,071.00 for additional mortgage payments (which Debtor testified represents the aggregate of the second mortgage and the pool loan), $1,000 for property taxes, $155.23 for homeowner's insurance, $85.00 for home maintenance at Line 4b, an additional $200.00 for home maintenance at Line 20d, homeowners' association fees of $55.00, $34.50 for flood insurance, and $193.08 for windstorm insurance, for a total of $4,690.38 per month in expenses related to the home.  Debtor's schedule J also lists an additional $1,095.00 per month for utilities.  (UST Exhibit 16).

Debtor's schedule J also lists monthly expenses, *inter alia*, of $755 on a vehicle loan, $750 for a nanny, and $450 for support for Debtor's 25 year old son.  Debtor testified that the $755 vehicle loan was due to mature during 2013.  He testified that the $750 for a nanny has been reduced to $480 per month for day care before and after the school days of Debtor's seven year

---

[1] Debtor testified that one of the Infiniti automobiles was traded in 2014 for a truck for Debtor's 25 year old son.

old son and four year old daughter. He testified that the $450 in support to his 25 year old son is a payment on his son's student loans. Debtor testified that he co-signed two of his son's student loans. He testified that his son has graduated college, and is now working as an architect. (UST Exhibit 16).

Debtor's Schedule I indicates that $857.16 is deducted from his monthly income for repayment of retirement fund loans. (UST Exhibit 16).

Debtor testified that, shortly after his divorce during 2012, he stopped making payments on the mortgages, the pool loan, and the vehicle loans.

Debtor testified that he currently receives gross income of $14,333.33 per month. He testified that, after deductions, he now receives net income of $8,587.13 per month. He testified that he has worked at his present employer for over 30 years.

Debtor's original Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C"), filed on February 15, 2013, identified annualized current monthly income of $158,107.92, or $13,175.66 per month. Debtor identified deductions based on a family size of four, in the amount of $11,797.44, for a monthly disposable income of $1,378.22. The deductions identified in the original Form B22C include, inter alia, $1,000 per month for

4

child support, $750 per month for childcare, and $1,507 per month for a mortgage/rent expense. In Line 47, Debtor listed the payments on debts secured by the home at zero. (Docket No. 12).

Debtor testified that he filed the Chapter 13 case, on the advice of his counsel, Alexander Wathen, with the expectation of confirming a plan and retaining his assets.

Debtor's initial plan, filed contemporaneously with Debtor's initial Form B22C, proposed payment of $2,900 per month for twelve months, followed by $5,700 per month for 46 months, and proposed for Debtor to retain the home. The plan proposed for Debtor to maintain payments through the Chapter 13 Trustee and cure arrearages identified by Debtor in the amounts of $12,000 for the first mortgage, $8,000 for the second mortgage, and approximately $16,000 in property taxes. The plan also provided for Debtor to maintain payments on the swimming pool loan. (Docket No. 13).

On April 4, 2013, Debtor filed an amended Form B22C. The amended Form B22C eliminated the $1,507 mortgage/rent expense deduction, replacing it with $6,433.10 in monthly payments on debts secured by the home, including monthly amounts of $4,541.92 on the first mortgage, $848.70 on the second mortgage, $1,042.48 on the swimming pool loan, and $187.24 for taxes. The amended Form B22C reflects a negative $4,558.34 in monthly disposable income. (Docket No. 28).

Debtor amended the plan on April 4, 2013 (Docket No. 29), July 24, 2013 (Docket No. 44), October 9, 2013 (Docket No. 56), and October 25, 2013 (Docket No. 60).  The first amendment extended the plan term from 58 to 60 months.  (Docket No. 29).  The second amendment provided for surrender of a timeshare interest in a resort; increased the amounts of the first and second lien arrearage to $35,727.21 and $8,110.41, respectively; and omitted the swimming pool loan.  (Docket No. 44).  The third amendment provided for payment of interest on the tax lien arrearage claims and identified their amounts (totaling $22,239.23), and corrected the omission of the swimming pool loan.  (Docket No. 56).  None of the first three amendments changed the payments, except for the second, which extended the term of the plan by two months.

The fourth amendment changed the payments to $3,575 for 13 months, followed by $5,700 for eleven months, followed by $6,350 for 36 months.  The amount of the regular payment on the first mortgage was increased to $2,604.31.  (Docket No. 60).

The Chapter 13 Trustee objected to each of the Chapter 13 plans proposed by Debtor and moved to dismiss the case four times.  In each of the motions to dismiss, the Chapter 13 Trustee cited the failure of Debtor to provide for payment in full of secured and priority claims within the term of the plan.  The Chapter 13 Trustee also asserted, in the fourth motion to

dismiss, that Debtor had not made plan payments.  (Docket Nos. 20, 38, 51, and 61).

On November 5, 2013, Debtor filed a notice of conversion to Chapter 7.  (Docket No. 62).  On December 18, 2013, Debtor filed a document titled "Notice of No Changes-Omnibus Conversion Schedule" (Docket No. 71) indicating that there were no material changes between the petition date and the date of conversion to Chapter 7.  Debtor did not file a Chapter 7 Statement of Current Monthly Income and Means-Test Calculation ("Form B22A").

On the same date, December 18, 2013, the Chapter 7 Trustee filed a "Report of No Distribution" indicating that he had no assets available for distribution to creditors. (Unnumbered Docket Entry 12/18/2013).

Ken Thomas, the staff attorney for the Chapter 13 Trustee, testified that, given the circumstances identified in Debtor's schedules, he believes Debtor could have proposed a confirmable plan providing for payment of all secured and priority debts in the term of the plan.

Debtor testified that he was unable to make the payments called for under the Chapter 13 plan.  He testified that he struggled to make the $2,900 payment initially called for under the plan, but was able to do so.  He testified that he had no ability to make the increased plan payment called for in the

13th month of his initial plan unless he obtained a promotion or some other large increase in his pay.

Debtor testified that, while the case was pending in Chapter 13, he borrowed approximately $5,000 from his mother, without disclosing the loan to the court or the Chapter 13 Trustee. He testified that he used the money borrowed from his mother to make debt payments to the homeowners' association. He testified that he made payments, totaling $5,929.37, to repay this loan from his mother.

Debtor testified that, while the case was pending in Chapter 13, he continued to make student loan payments, outside the Chapter 13 plan.

Debtor testified that he has made no payments on the mortgages or pool loan since 2012. JPMorgan Chase Bank, N.A. ("Chase") has filed a proof of claim with respect to the first mortgage, in the amount of $298,634.47, showing an arrearage amount as of the petition date of $35,747.21. (Claim No. 10-1). Chase has also filed a notice of postpetition mortgage fees, expenses, and charges in the amount of $325.00. RBS Citizens N.A. has filed a proof of claim with respect to the second mortgage, in the amount of $55,123.97, showing an arrearage amount as of the petition date of $8,110.41. (Claim No. 11-1).

Thomas testified that the Chapter 13 Trustee disbursed $20,049.72 on the mortgages during the Chapter 13 case. The

court finds Thomas' testimony credible on this issue.

Debtor testified that on April 16, 2014, after the case had been converted to Chapter 7, he paid $1,500 to Daphne Mikel. He testified that the payment was a gift to the woman he was dating at the time. He testified that he provided an additional $7,097.65 to Mikel during May, 2014, to help her get back on her feet during her divorce.

Debtor testified that he paid some funds to his son while the case was pending under Chapter 7 to "help with some things" and to pay ahead on his student loans.

Debtor testified that the source of funds for his payments to Mikel and to his son was a loan from his 401k retirement account. Debtor testified that the plan administrator of his 401k plan has a policy whereby an employee may maintain only three outstanding 401k loans at any time, and that a borrowable balance is calculated by the 401k plan administrator.

Debtor testified that he borrowed an additional $10,000 from his 401k account in order to establish a joint savings account with Mikel. He testified that he retained most of the funds in the joint savings account after he and Mikel stopped dating.

Debtor testified that he borrowed money from his former wife in order to pay back one 401k loan, in order to take out another 401k loan in a larger amount. He testified that he paid

his former wife back, during the Chapter 13 case, out of proceeds of the larger 401k loan.

Debtor filed amended schedules of income and expenses (Docket No. 82) on June 25, 2014, several months after conversion to Chapter 7.  The amended schedules reflect a reduction in Debtor's net monthly income from $8,794.23 to $8,112.62.  The amended schedules reflect expenses of $11,052.28, as compared to $5,894.23 in the schedules filed on October 9, 2013 (Docket No. 57).  A portion of the increase in expenses is explained by the omission from the October 9, 2013 expenses of the two home mortgages and the payments for flood insurance and windstorm insurance.  The monthly expense item for telephone increased from $170 to $250.  The monthly expense item for food increased from $600 to $800.  The monthly expense item for property taxes increased from $500 to $1,000.  The monthly expense item for transportation other than car payments increased from $508.31 to $625.00.  The monthly expense for home maintenance increased from $85 to $285.

In the instant motion, the United States Trustee seeks dismissal under Section 707(b) of the Bankruptcy Code on grounds 1) Debtor filed the petition in bad faith and prosecuted the case under Chapter 13 in bad faith; 2) Debtor has sufficient monthly disposable income to fund a Chapter 13 plan; and 3) under the totality of the circumstances, granting relief to Debtor under

Chapter 7 would constitute an abuse of the provisions of Chapter 7. (Docket No. 83).

Debtor asserts that Section 707(b) of the Bankruptcy Code does not apply in a case converted from Chapter 13 to Chapter 7. Debtor denies the material allegations of the instant motion. (Docket No. 85). Debtor testified that his goal in seeking a Chapter 7 discharge is to remain in his home. He testified that his home is the only home his two youngest children have known, and he wants to hold on to the home to maintain stability in their lives.

## Conclusions of Law

Section 707(b)(1) of the Bankruptcy Code provides in pertinent part:

> (b)(1) After notice and a hearing, the court...may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b).

The cases are split on the question of whether Section 707(b) applies with respect to a case converted from Chapter 13 to Chapter 7. The majority of courts have held that Section 707(b) applies with respect to a converted case. The rationales for the holdings of those courts are 1) that Section 707(b)(1) must be read in light of Section 348(a) of the Bankruptcy Code,

11

which provides that conversion of a case does not change the date of filing of the petition, the commencement of the case, or the order for relief; and 2) that the word "filed," in Section 707(b)(1), rather than the phrase "filed by an individual debtor under this chapter," modifies the word "case."  See In re Davis, 489 B.R. 478 (Bankr. S.D. Ga. 2013); In re Summerville, 515 B.R. 651 (Bankr. M.D. Fla. 2014); In re Perfetto, 361 B.R. 27 (Bankr. D.R.I. 2007); In re Lassiter, 2011 WL 2039363 (Bankr. E.D. Va. 2011); In re Chapman, 447 B.R. 250 (8th Cir. BAP 2011); and In re Willis, 408 B.R. 803 (Bankr. W.D. Mo. 2009).

The minority view, followed by one judge in this district, holds that the plain language of the phrase "filed by an individual debtor under this chapter" in Section 707(b)(1) excludes cases filed by individual debtors under another chapter. See In re Pate, 2012 WL 6737814 (Bankr. S.D. Tex. 2012) In re Dudley, 405 B.R. 790 (Bankr. W.D. Va. 2009); In re Fox, 370 B.R. 639 (Bankr. D.N.J. 2007); In re Miller, 381 B.R. 736 (Bankr. W.D. Ark. 2008); In re Layton, 480 B.R. 392 (M.D. Fla. 2012), and In re Thoemke, 2014 WL 443890 (Bankr. M.D. Fla. 2014).

Although, as noted by several of the courts, either reading of Section 707(b)(1) is sensible, this court finds persuasive the rationales advanced by the courts which have determined that Section 707(b)(1) applies in converted cases. The court concludes that Section 707(b)(1) applies in converted

cases.

        Section 707(b)(3) of the Bankruptcy Code provides:

        (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider -

            (A) whether the debtor filed the petition in bad faith; or
            (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).[2]

        In determining whether dismissal is appropriate considering the totality of circumstances under Section 707(b)(3), courts consider the following factors, among others:

        (1) Whether the debtor could pay a substantial portion of his debts from future income in a hypothetical Chapter 13 case;
        (2) Whether the bankruptcy petition was filed due to sudden illness, calamity, disability, or unemployment;
        (3) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
        (4) Whether the debtor's proposed family budget is reasonable;

---

[2] The court notes that some of the factual allegations raised by the United States Trustee in the instant motion appear to support an implied argument that the presumption of abuse in Section 707(b)(2) of the Bankruptcy Code applies in the instant case. However, in the absence of such an argument expressly raised, the court considers the instant motion only on the sections cited, Sections 707(b)(1) and 707(b)(3). Moreover, it appears that, in light of the deduction for secured debt, the presumption of abuse does not arise in the instant case.

> (5) Whether the debtor is seeking to reaffirm a large amount of secured debt to the detriment of unsecured creditors;
> (6) Whether the debtor's Schedules and Statement of Current Income and Expenses reasonably and accurately reflect his true financial condition;
> (7) Whether the debtor has a stable source of income;
> (8) Whether the debtor is eligible to file a Chapter 13 case;
> (9) Whether there are state remedies or private negotiations that the debtor can invoke to ease his financial predicament;
> (10) Whether the debtor's expenses can be reduced without depriving the debtor of basic necessities; and
> (11) Whether the petition was filed in good faith.

In considering these factors, the focus of the court's inquiry is on the debtor's ability to re-pay his debts. In re McDowell, 2013 WL 587312 (Bankr. S.D. Tex. 2013).

The court may consider post-petition events in deciding whether to dismiss a case for abuse. In re Cortez, 457 F.3d 448 (5th Cir. 2006).

A debtor is not expected to live in poverty to pass scrutiny in an action brought to dismiss under Section 707(b)(3). However, Chapter 7 debtors are expected to do some financial belt tightening and may be required to forgo amenities to which they had been accustomed. See In re Ramsay, 440 B.R. 85 (Bankr. M.D. Pa. 2010) and cases cited therein. A debtor's budget may be excessive or unreasonable based on a high mortgage payment. In considering whether housing expenses are excessive, due regard should be given to the size of the family, their reasonable needs, and the cost of alternative housing. In re Crink, 402

B.R. 159 (M.D.N.C. 2009).

In the instant case, determining whether Debtor could repay a substantial portion of his unsecured debt in a Chapter 13 case depends on whether Debtor retains his home under the current circumstances. Debtor's present monthly expenses related to the home, excluding utilities, and without making any provision for arrearage claims, total $4,690.38 per month, or approximately 58 percent of the $8,112.62 he identified in his most recent schedules as his take home pay.[3] The amount identified by Debtor for housing and utilities is more than triple in raw numbers the IRS Local Standards for housing and utility expense for a family the size of Debtor's family, for both Galveston County, Texas, where Debtor presently resides, and Harris County, Texas, where Debtor presently works.

Chapter 13 generally allows an individual debtor to preserve prepetition assets through a plan funded primarily with the individual's income. Cortez, 457 F.3d, at 457. The Chapter 13 means test instructs a debtor to deduct specified expenses from his current monthly income. The result is his disposable income--the amount he has available to reimburse creditors. Ransom v. FIA Card Services, N.A., 562 U.S. 61, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011). The deductions include payments on

---

[3] The recurring monthly expenses related to the home total approximately 55 percent of the $8,587.13 take home pay Debtor testified he now receives.

15

secured debt.  11 U.S.C. §§ 1325(b), 707(b)(2)(A)(iii).

Permitting Debtor to take a deduction for all the payments on secured debt in the instant case results in a sizable negative number for monthly disposable income.  Thus, Debtor would be permitted to propose a Chapter 13 plan that would provide a negligible distribution to unsecured creditors--a similar result to that under Chapter 7.  However, Debtor's intent to spend 55 percent of his considerable take home pay on expenses related to a luxury home while making no payments to unsecured creditors is on too large a scale.

Debtor argues that his divorce is a calamity that caused him to file the instant case.  However, while Debtor was not making payments to unsecured creditors (except for payments on student loans), Debtor was able to marshal funds to make sizable gifts to his son and a woman he was dating, and to repay a loan from his mother.  The court finds that these factors weigh in favor of dismissal.

There is no evidence that Debtor incurred consumer purchases in excess of his ability to repay, other than building the home.  This factor weighs against dismissal.

As noted above, Debtor's proposed family budget, which calls for spending 55 percent of his take home pay on housing and utility expenses, is unreasonable.

16

As to the question of whether Debtor is seeking to reaffirm a large amount of secured debt to the detriment of unsecured creditors, Debtor, purportedly upon the advice of his counsel, appears to have changed his mind frequently as to whether he wished to retain the home, and whether he had the ability to do so. Debtor has not filed a statement of intention with respect to the debts secured by the home. The court infers from Debtor's testimony that he intends to reaffirm the secured debts and retain the home. This factor weighs in favor of dismissal.

Although it appears that there may have been some inaccuracy in some of the schedules filed in the instant case (particularly, the omission of the swimming pool loan), the schedules as a whole appear to reasonably and accurately reflect the Debtor's true financial condition. This factor weighs against dismissal.

Debtor's testimony indicates that he has a stable source of income. This factor is neutral as to whether the instant case should be dismissed in considering the totality of circumstances.

As noted above, Debtor would have been eligible to file a Chapter 13 case, and did in fact file such a case. This factor is neutral as to whether the instant case should be dismissed in considering the totality of circumstances.

There is no evidence as to state remedies available to ease Debtor's financial predicament. This factor is neutral as to whether the instant case should be dismissed in considering the totality of circumstances.

It is clear in the instant case that Debtor's expenses can be dramatically reduced without depriving him and his dependents of basic necessities. Debtor is currently incurring expenses of more than triple the IRS Local Standards for housing and utility expense, in order to maintain a luxury home valued significantly above the median purchase price for homes in the Harris County or Galveston County areas of Texas.

As to whether the petition was filed in good faith, the court finds that Debtor filed the petition in good faith. However, he appears not to have conducted the case in good faith, either under Chapter 13 or Chapter 7. Debtor, purportedly upon the advice of counsel, intended to confirm a plan under Chapter 13. However, after having consulted with his counsel and filing the instant case, he continued to manipulate his finances in order to go further into debt postpetition.[4] Debtor ultimately did not propose a Chapter 13 plan supported by reasonable expectations as to his income. All the plans he proposed were

---

[4]The court does not reach a conclusion as to whether Debtor's decision to do so was undertaken with the advice of counsel. However, counsel should have advised Debtor of the need to avoid incurring further debt, and was prohibited from advising Debtor to incur more debt. See 11 U.S.C. § 526(a)(4).

based on the possibility that he might receive a substantial increase in pay--an increase which has not materialized. This factor weighs in favor of dismissal.

In addition, the court notes that Debtor's stated goal, retaining ownership of the home, likely is not supported by the retention of the instant case in Chapter 7. Given that the Chapter 7 Trustee has filed a report of no distribution, if a Chapter 7 discharge were entered, then it appears likely the secured creditors would be free to exercise whatever rights they may have with respect to the property.[5] This factor weighs in favor of dismissal.

The court concludes, in consideration of the totality of circumstances, that the instant case should be dismissed.

Based on the foregoing, a separate Judgment will be entered dismissing the above captioned Chapter 7 case pursuant to Section 707(b) of the Bankruptcy Code.

Signed at Houston, Texas on January 16, 2015.

*/s/ Letitia Z. Paul*
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

---

[5] The court additionally notes that, because nearly two years have passed since the filing of the petition in the instant case, it is unlikely that Debtor would be able to cure his arrearages on the home mortgages if the instant case were reconverted to Chapter 13.